IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBRA L. ALEXANDER, adoptive | : | CIVIL ACTION NO. **3:CV-13-1758** |
| parent and Administratrix of the Estate | : | |
| of SCOTT ALONZO ALEXANDER, | : | (Judge Kosik) |
| | : | |
| Plaintiff | : | (Magistrate Judge Blewitt) |
| | : | |
| v. | : | |
| | : | |
| MONROE COUNTY, *et al.*, | : | |
| | : | |
| Defendants | : | |

**<u>REPORT AND RECOMMENDATION</u>**

**I.     BACKGROUND.**

On June 25, 2013, Plaintiff, Debra L. Alexander, a resident of East Stroudsburg,

Pennsylvania, and adoptive parent and Administratrix of the Estate of Scott Alonzo Alexander, an

inmate formerly confined at the Monroe County Correctional Facility ("MCCF"), Monroe County,

Pennsylvania, filed through counsel, this instant civil rights action pursuant to 42 U.S.C. § 1983.

(Doc. 1). Plaintiff paid the filing fee. Plaintiff then filed an Amended Complaint on September 13,

2013. (Doc. 17).   On October 17, 2013, Plaintiff filed a  Motion for Leave of Court to File a

Second Amended Complaint to include Dr. Dedania as a party Defendant and to permit the claims

against Dr. Dedania to relate back to the date of Plaintiff's original Complaint (Doc. 1), pursuant to

Fed.R.Civ.P. 15(a) and (c). (Doc. 30). On November 5, 2013, the Court issued an Order and

granted Plaintiff 's Doc. 30 Motion. (Doc. 36).

Plaintiff filed her Second Amended Complaint on November 5, 2013. (Doc. 37). Plaintiff

names as Defendants Monroe County, Donna Asure, MCCF Warden, James Landon, MCCF

correctional Officer ("CO"), Prime Care Medical, Inc. ("Prime Care"), Dr. Alex T. Thomas, Dr. Debra Wilson, Dr. Dedania, and Wendi Johnson, LPN. Plaintiff appears to sue only Defendant Warden Asure in both her individual and official capacities. Plaintiff states that Dr. Alex T. Thomas, Dr. Debra Wilson, Dr. Dedania, and Wendi Johnson, LPN , were all employees of Prime Care and that Prime Care was contracted by Monroe County during the relevant time to provide inmates confined at MCCF with medical and mental health care.

Subsequently, Defendants (except for Dr. Thomas and Dr. Dedania) were served with Plaintiff's Second Amended Complaint. On November 7, 2013, Defendants Asure, Landon and Monroe County ("County Defendants") jointly filed a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). **(Doc. 38).** County Defendants simultaneously filed their support brief. (Doc. 39). Plaintiff filed her opposition brief on November 19, 2013. (Doc. 42). County Defendants did not file a reply brief.

On November 18, 2013, Defendants Prime Care, Dr. Wilson and Nurse Johnson filed their Answer to Plaintiff's Second Amended Complaint with Affirmative Defenses. (Doc. 41).

On November 21, 2013, Defendant Dr. Thomas was served with Plaintiff's Second Amended Complaint and signed a Waiver of Service Form. Defendant Dr. Thomas' response to Plaintiff 's pleading is due by January 17, 2014.

To date, it does not appear that Defendant Dr. Dedania has been served with Plaintiff's Second Amended Complaint. We will direct Plaintiff to file a status report with the Court as to why Defendant Dr. Dedania has not been served with her Second Amended Complaint.

We now consider County Defendants' **Doc. 38** Motion to Dismiss Second Amended Complaint. We have been assigned this case for pre-trial matters.

## II.     SECOND AMENDED COMPLAINT (DOC. 37).

In her Second Amended Complaint, Doc. 37, Plaintiff raises several constitutional claims under §1983 arising from the suicide death of Scott Alonzo Alexander ("Alexander") when he was confined at MCCF. Plaintiff also raises state law medical malpractice claims against the medical Defendants.[1] Plaintiff avers that on April 24, 2011, Alexander was arrested and charged with new offenses while he was on parole from a previous sentence and that he was incarcerated at MCCF. Plaintiff states that Alexander was previously confined at MCCF in January 2010 and March 2010, and that prison officials knew that Alexander had mental health conditions, abused drugs and alcohol and, had a history of suicide attempts. Plaintiff avers that after Alexander was re-confined at MCCF on April 24, 2011, for a parole violation, he was placed on suicide watch by MCCF officials until May 18, 2011. Plaintiff states that on May 18, 2011, Defendant Nurse Johnson removed Alexander from suicide watch despite the fact that Alexander had a history of mental health problems and suicidal ideations. Plaintiff avers that on May 26, 2011, Alexander complained to medical staff at MCCF that he was paranoid.

Plaintiff avers that at all times during Alexander's confinement in MCCF from April 24, 2011 through July 19, 2011, Prime Care was contracted by Monroe County to provide medical care to

---

[1]The Court has jurisdiction over this §1983 civil rights case pursuant to 28 U.S.C. §1331 and §1343(a). The Court can exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367.

inmates confined at MCCF and, that medical Defendants, Dr. Alex T. Thomas, Dr. Debra Wilson, Dr. Dedania, and Wendi Johnson, LPN, provided medical care to Alexander. On June 3, 2011, Prime Care referred Alexander to its psychiatrist since he was very upset. On June 4, 2011, Alexander complained to medical staff that he was anxious, paranoid and depressed, and a Prime Care physician prescribed a psychotropic drug for Alexander.

Plaintiff alleges that on July 19, 2011, Alexander hanged himself with bed sheets in his cell at MCCF, one day after his parole was revoked due to his April 24, 2011 arrest, and he was ordered to serve the remainder of his underlying (2010) Monroe County sentence. Plaintiff avers that Defendant Landon tried to revive Alexander and performed CPR on Alexander with gum in his mouth. Plaintiff alleges that Landon's gum fell into Alexander's mouth blocking Alexander's airway. Plaintiff avers that emergency medical personnel were able to get a pulse from Alexander and remove the gum from his airway, but that he could not breathe on his own. Plaintiff states that Alexander later died in a hospital on July 21, 2011, at 23 years old.

In Count I, Plaintiff raises a claim under §1983 against Defendants Asure and Monroe County for deliberate indifference to Alexander's risk of suicide and for violation of his constitutional rights to receive proper medical care under the Fifth, Eighth and Fourteenth Amendments due to custom, policies and practices of the County. Plaintiff also raises a due process claim and an equal protection claim under the Fifth and Fourteenth Amendments in Count I.

In Count II, Plaintiff raises an Eighth Amendment claim against Defendant CO Landon under §1983 alleging Landon was deliberately indifferent to Alexander's serious medical needs by performing CPR on Alexander with gum in his mouth. Plaintiff also raises a due process claim and

4

an equal protection claim under the Fifth and Fourteenth Amendments against Defendant Landon.

In Count III, Plaintiff asserts an Eighth Amendment claim against Defendant Monroe County under §1983 alleging that the County had a custom and policy of failing to provide adequate funding to the County's Public Defender's Office so that it could properly represent indigent criminal Defendants, especially those with mental health conditions which required psychiatric evaluations. Plaintiff also raises a due process claim and an equal protection claim under the Fifth and Fourteenth Amendments against Defendant Monroe County.

In Count IV, Plaintiff asserts an Eighth Amendment claim against Defendant Prime Care under §1983 alleging that this Defendant had a custom and policy of failing to provide adequate mental health care and treatment to inmates confined in MCCF and, a policy of failing to insure proper suicide watch procedures. Plaintiff also raises a due process claim and an equal protection claim under the Fifth and Fourteenth Amendments against Defendant Prime Care.

In Count V, asserts an Eighth Amendment claim against Defendants Dr. Alex T. Thomas, Dr. Debra Wilson, Dr. Dedania, and Wendi Johnson, LPN, under §1983, alleging that these Defendants were deliberately indifferent to the risk that Alexander would commit suicide while confined at MCCF. Plaintiff also raises a due process claim and an equal protection claim under the Fifth and Fourteenth Amendments against Defendants Dr. Alex T. Thomas, Dr. Debra Wilson, Dr. Dedania, and Wendi Johnson, LPN.

In Count VI, Plaintiff raises a Pennsylvania state law negligence claims against Defendants Prime Care, Dr. Alex T. Thomas, Dr. Debra Wilson, Dr. Dedania, and Wendi Johnson, LPN. Insofar as Plaintiffs raises professional medical malpractice claims against said medical Defendants,

she attaches  Certificates of Merit ("COM") under Pennsylvania Rule of Civil Procedure 1042.3(a)

to her Second Amended Complaint as Exhibit A.[2]

As relief, Plaintiff requests compensatory and punitive damages as well as attorney's fees and

costs.[3]

## III.    STANDARDS OF REVIEW.

### A.    *SECTION 1983 STANDARD*

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements:

---

[2]To the extent Plaintiff is seeking to file a medical malpractice action under state law
against the medical Defendants, she is required to file a Certificate of Merit ("COM") under
Pennsylvania law pursuant to Pa.R.C.P. 1042.3(a)(1).  A COM is required for a Pennsylvania
professional negligence claim raised in a malpractice action.  *See Santee v. U.S.*, Civil Action No.
3:CV-07-2207, September 30, 2008 Memorandum and Order (M.D. Pa.),  2008 WL 4426060
(M.D. Pa.).  "The COM requirement is set forth in a procedural rule, but federal courts
exercising diversity and supplemental jurisdiction have considered it substantive law that must
be applied to claims under Pennsylvania law presented in federal court." *Booker v. U.S.*, 2009
WL 90129, *3 (citations omitted).  The Third Circuit affirmed a case in the Middle District of
Pennsylvania in which the District Court found that PA Rule 1042.3 is a rule of substantive state
law and that Plaintiffs in federal court must comply with this rule.  *See Perez v. Griffin*, 2008 WL
2383072 (M.D. Pa.), aff'd. 2008 WL 5351829 (3d Cir. 12-23-08); *Hodge v U.S. DOJ,* 372 Fed.
Appx. 264, 267 (3d Cir. 2010) (A COM is required to state a medical negligence claim in federal
court).
As stated above, Plaintiff filed  COM's in this case against the medical Defendants and
attached them to her Second Amended Complaint.

[3]We note that to the extent that Plaintiff is seeking monetary damages (*i.e.*,
compensatory and punitive damages) against MCCF Defendants Asure and Landon in their
official capacities, these requests for relief should be dismissed with prejudice as Plaintiff can
only seek monetary damages from these Defendants in their personal capacities.  *See Will v.
Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3
(M.D. Pa.); *Mitchell v. Luckenbill*, 680 F.Supp. 2d 672, 681 (M.D. Pa. 2010);  *Gale v. Stori*, 608
F.Supp. 2d 629, 636 (E.D. Pa. 2009).
We also note that Plaintiff cannot recover punitive damages against the municipal
Defendant Monroe County.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct.
2748 (1981).

(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Kaucher v. County of Bucks*, 455 F.3d at 423. Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *see also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Slater v. Susquehanna County*, 613 F. Supp. 2d 653, 660 (M.D. Pa. 2009) (citations omitted); *Stankowski v. Farley*, 487 F. Supp. 2d 543, 550 (M.D. Pa. 2007) ("only those who act under color of state law are liable to suit under section 1983."). "In order to satisfy the second prong [of a §1983 civil rights action], a Defendant does not have to be a state official, but can also be held liable as a state actor." *Slater v. Susquehanna County*, 613 F. Supp. 2d at 660(citations omitted).

Plaintiff alleges in her Second Amended Complaint that the individual Defendants were all acting under color of state law.

It is well-established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id*. Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's

claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted). A civil rights complaint must state time, place, and responsible persons. *Id.* Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208.

## B.  MOTION TO DISMISS STANDARD

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).
>
> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all

of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler,* 578 F.3d at 210-11.

The Third Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.*, No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (quoting *Twombly*, 550 U.S. at 555) (not precedential).

Also, the *Reisinger* Court stated:

Where the parties submit exhibits with their filings, a court must determine what documents may be considered with a motion to dismiss. In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6)of the Federal Rules of Civil Procedure, the Third Circuit Court of Appeals had held that "a court can consider certain narrowly defined types of material without converting the motion to dismiss" to one for summary judgment. *In re Rockefeller Center Properties, Inc. Securities Litigation,* 184 F.3d 280, 287 (3d Cir. 1999). **Specifically, a court can consider "a document integral to or explicitly relied upon in the complaint ... [and] an indisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."** (*Id.* (internal citations and quotation omitted).) The Circuit Court explained the rationale for these exceptions: "the primary problem raised by looking to documents outside the complaint-lack of notice to the plaintiff-is dissipated where plaintiff has actual notice and has relied upon these documents in framing the complaint." FN11

> *Id.* (internal citations and quotations omitted).) Matters of public record, including government agency records and judicial records, may be considered. *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.,* 458 F.3d 244, 257 n. 5 (3d Cir.2006) (citation omitted); *Pension Benefit Guarantee Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993).

712 F.Supp. 2d at 343-344(emphasis added).

In their brief in support of their Motion to Dismiss , County Defendants refer to the Monroe County Court Criminal Docket of *Comm. of PA v. Alexander*, 1150 CR 2011.[4] Even though Alexander's Criminal Docket is outside of the pleadings, it is a matter of public record and, Plaintiff's claims are, in part, based on these indisputably authentic documents. As such, we agree with Defendants that Alexander's Criminal Docket should be considered with respect to their Motion to Dismiss. We also note that the Court can take judicial notice of the state court records in Alexander's criminal case. *See Santiago v. Saul*, 2013 WL 4418533 (M.D. Pa. Aug. 14, 2013).

## IV.    DISCUSSION.

As noted, insofar as Plaintiff is seeking monetary damages, *i.e.*, compensatory and punitive damages, against MCCF Defendants Asure and Landon in their official capacities, these requests for relief should be dismissed with prejudice as Plaintiff can only seek monetary damages from these Defendants in their personal capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Mitchell v. Luckenbill*, 680 F.Supp. 2d 672, 681 (M.D. Pa. 2010); *Gale v. Stori*, 608 F.Supp. 2d 629, 636 (E.D. Pa. 2009).

Further, as noted, Plaintiff cannot recover punitive damages against the municipal Defendant

---

[4]We note that Alexander's Criminal Docket  from the Monroe County Court can be found at http://ujsportal.pacourts.us/DocketSheets/CP.aspx.

Monroe County. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748 (1981).

Insofar as Plaintiff states in Counts I, II, III and IV of her Second Amended Complaint that the conduct of all Defendants was in in violation of Alexander's Fifth Amendment due process rights, Plaintiff has no Fifth Amendment claim since there is no alleged involvement by a federal actor. *See Leventry v. Watts,* 2007 WL 1469038, *2 (W.D. Pa. 5-17-07); *Hammond v. City of Wilkes-Barre*, 2012 WL 3542277, *4 (M.D. Pa. Aug. 14, 1012)(due process claim under Fifth Amendment only applies to federal actors)(citing *Caldwell v. Beard*, 324 F.Appx 186, 189 (3d Cir. 2009)). Thus, Plaintiff's Fifth Amendment due process claims in Counts I, II, III and IV of her Second Amended Complaint as against all Defendants should be dismissed with prejudice. We find futility in allowing Plaintiff leave to amend her Fifth Amendment claims since there is no federal actor Defendant. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002)(Complaints should not be dismissed without leave to amend unless "amendment would be inequitable or futile").

Additionally, to the extent Plaintiff states in Counts I, II, III and IV of her Second Amended Complaint that the conduct of all Defendants was in violation of Alexander's Fourteenth Amendment due process rights and equal protection rights in addition to Alexander's Eighth Amendment rights, we find that these Fourteenth Amendment claims should be dismissed with prejudice. We find that since Plaintiff's deliberate indifference, failure to protect and denial of proper medical care claims are covered by the Eighth Amendment, her Fourteenth Amendment due process and equal protection claims should be dismissed. Plaintiff does not allege any specific facts and elements to support her Fourteenth Amendment claims, but rather lumps these claims

under the facts surrounding her Eighth Amendment claims. The Equal Protection Clause guarantees all citizens "equal protection of the laws," meaning that similarly situated people must be treated the same. U.S. Const. amend. XIV. In order to successfully raise an equal protection claim, a plaintiff "must present evidence that she/he has been treated differently from persons who are similarly situated." *Williams v. Morton*, 343 F. 3d 212, 221 (3d Cir. 2003). However, if an infringement on a prisoner's equal protection rights is reasonably related to a legitimate penological interest, the prison regulation will be upheld. *DeHart v. Horn*, 227 F. 3d 47, 61 (3d Cir. 2000); *Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 423 (3d Cir. 2000). Our Plaintiff has failed to allege that Alexander was a member of a suspect class and has failed to allege that there was a difference between Alexander's medical treatment and the other inmates' medical treatment based on his membership in a protected class.

Furthermore, Plaintiff's Fourteenth Amendment due process claim is identical and already covered under her Eighth Amendment claims. According to the Third Circuit, when a due process claim is identical to an Eighth Amendment claim, a Plaintiff must bring the claim pursuant to the more explicit constitutional amendment. *Ordonez v. Yost*, 289 Fed.Appx 553, 555 (3d Cir. 2008)(*citing Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)*); Cunningham v. Doe*, 2012 WL 3879245 (M.D.Pa. Aug. 13, 2012), adopted by 2012 WL 3879233 (M.D.Pa. Sept. 6, 2012); *Laurensau v. Pluck*, 2013 WL 4779010, *5 (W.D.Pa. Sept. 5, 2013)(citing *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010)).

Therefore, because Plaintiff's Fourteenth Amendment claims are already covered by her Eighth Amendment claims, because the Eighth Amendment is the more explicit constitutional

amendment as it directly deals with Alexander's confinement conditions and medical care at MCCF, and because Plaintiff does not allege any requisite facts and elements to support any Fourteenth Amendment violations, we will recommend that her Fourteenth Amendment claims in Counts I, II, III and IV of her Second Amended Complaint be dismissed with prejudice as against all Defendants. Based on the above, we find futility and undue prejudice to Defendants to allow Plaintiff to file a third amended complaint with respect to her Fourteenth Amendment claims. *See Cunningham v. Doe, supra; Laurensau v. Pluck, supra.*

Moreover, we agree with County Defendants that Plaintiff's Eighth Amendment claim against Defendant CO Landon fails to state a cognizable cause of action. As stated, in Count II, Plaintiff raises an Eighth Amendment claim against Defendant CO Landon under §1983 alleging Landon was deliberately indifferent to Alexander's serious medical needs after Alexander was found hanging himself at MCCF by performing CPR on Alexander with gum in his mouth. Plaintiff states that Landon's gum fell into Alexander's mouth and then blocked Alexander's airway. We agree with County Defendants that these allegations amount only to a negligence claim.

In *Brown v. U.S.*, 2010 WL 936241, *10 (M.D. Pa. March 12, 2010), the Court stated:

> The Eighth Amendment to the United States Constitution states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend VIII. Accordingly, the Eighth Amendment protects inmates from "unnecessary and wanton infliction of pain." *Fuentes v. Wagner,* 206 F.3d 335, 344 (3d Cir.2000) (quoting *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (citations and internal quotations omitted)). To maintain an Eighth Amendment claim of cruel and unusual punishment against a prison official, a plaintiff must establish that the official acted with "deliberate indifference." *Farmer v. Brennan,* 511 U.S. 825, 832-34, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Accordingly, "the plaintiff has the burden to show that

defendant knew of, and disregarded, an excessive risk to his health or safety." *Davis v. Muscarella,* 615 F.Supp.2d 296, 301 (D.Del.2009) (citing *Beers-Capitol v. Whetzel,* 256 F.3d 120, 133 (3d Cir.2001) (citations omitted)). "The knowledge requirement is subjective, 'meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware.'" *Davis,* 615 F.Supp.2d. at 301 (quoting *Farmer,* 511 U.S. at 841).

The *Brown* Court, 2010 WL 936241, *12, also stated:

> "[t]he test for whether a prison official was deliberately indifferent is whether that defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer,* 511 U.S. at 841. "The official must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

As stated, we find that Plaintiff's allegations against Defendant CO Landon clearly only amount to negligence claims. Plaintiff has clearly not alleged that Defendant Landon was deliberately indifferent to Alexander's safety and that Landon performed CPR on Alexander with gum in his mouth knowing Alexander faced a substantial risk of harm from the gum. We find that Plaintiff has failed to state Defendant Landon acted with a sufficiently culpable state of mind with respect to her Eighth Amendment claim against him. Plaintiff has failed to allege that Defendant Landon knew of and disregarded any excessive risk to Alexander by failing to remove the gum from his mouth in an emergency situation when Alexander was found hanging himself in his cell at MCCF on July 19, 2011, and that Landon was aware of facts from such an inference could be drawn.

Moreover, mere negligence, which Plaintiff has alleged against Defendant Landon, is not

sufficient to state a constitutional claim. In *Whitely v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078 (1986), the Supreme Court stated that "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize[s] that conduct prohibited by the Cruel and Unusual Punishment clause, ... ."  We find that Plaintiff's allegations only show Defendant Landon may have made an error in judgment in failing to remove the gum from his mouth before he commenced emergency CPR on Alexander.

Furthermore, in *Caldwell v Beard*, 324 Fed.Appx. 186, 188 (3d Cir. April 27, 2009), the Third Circuit Court of Appeals stated, "[c]laims of negligence, without a more culpable state of mind, do not constitute 'deliberate indifference.' *See Singletary v. Pa. Dept. Of Corr.*, 266 F.3d 186, 193 n. 2 (3d Cir.2001)." Thus, since we find that Plaintiff's allegations against  Defendant Landon amount only to negligence, her allegations are not actionable under § 1983.   As discussed above, we find that Plaintiff's detailed allegations in her Second Amended Complaint  fail to show that Defendant CO Landon was deliberately indifferent to Alexander's safety on July 19, 2011. *See Lark v. Dillman*, Civil No. 13-0335, M.D. Pa.

Thus, we will recommend that Plaintiff's Eighth  Amendment claim in Count  II of her Second Amended Complaint be dismissed with prejudice as against Defendant CO Landon. Based on the above, we find futility and undue prejudice to Defendant Landon to allow Plaintiff to file a third amended complaint (*i.e.,* a fourth pleading) with respect to her Eighth Amendment claim against him. *See  Lark v. Dillman, supra*.    Also, since we find no other claims against Defendant Landon, we will recommend that this Defendant be dismissed entirely from this case.

Next, County Defendants argue that since Plaintiff admits in her Second Amended

Complaint that Alexander was being treated by the medical Defendants at MCCF during the applicable time period and, since Plaintiff states that these medical Defendants were solely responsible for Alexander's medical and mental health care and the decisions as to whether Alexander should be on suicide watch, Warden Asure and Monroe County cannot be held liable with respect to Plaintiff's Eighth Amendment claims. In Count I, Plaintiff raises a claim under §1983 against Defendants Asure and Monroe County for violations of Alexander's constitutional rights to receive proper medical care under the Eighth Amendment due to custom, policies and practices of the County. As mentioned, Plaintiff sues Defendant Warden Asure in both her individual and official capacities.

In *George v. PA DOC*, 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

> The doctrine of *respondeat superior* does not apply to constitutional claims. *See Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" ); *see also Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior*) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim. *Iqbal, supra,* --- U.S. at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode,* 845 F.2d at 1207. "In order to satisfy the 'personal involvement' requirement, a [§ 1983] complaint need only allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326 F. App'x 97, 101 (3d Cir.2009) (per curiam) (non-precedential).

*See also Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d Cir. 12-14-10).

The Court in *Rogers v. U.S.,* 696 F.Supp.2d 472, 488 (W.D. Pa. 2010), repeated the personal involvement necessary in civil rights action, and stated:

> When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. *Chinchello v. Fenton,* 805 F.2d 126, 133 (3d Cir.1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." *Id. quoting Brown v. Grabowski,* 922 F.2d 1097, 1120 (3d Cir.1990), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991). The supervisor must be personally involved in the alleged misconduct. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). Section 1983 [or 1331] liability cannot be predicated solely on *respondeat superior. Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *see also Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action)[.]

Based on the above-detailed allegations in Plaintiff's Second Amended Complaint, it is clear that Plaintiff fails to state the requisite factual specificity and allegations of personal involvement with regards to Plaintiff's constitutional claims as against Defendant Warden Asure in her individual capacity. It appears that Plaintiff has named Defendant Warden Asure in her individual capacity solely on the basis of *respondeat superior* which is not permissible in a civil rights action.

Also, as discussed above, we find that Defendant Warden Asure should be dismissed in her individual capacity with respect to Plaintiff's Eighth Amendment claims since an individual government defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior. Evancho v. Fisher*, 423 F.3d 347, 353 (3d. Cir. 2005). For the Plaintiff's Eighth Amendment claims to proceed against Defendant Asure, Plaintiff would have to establish that Asure acted with a culpable

17

state of mind with respect to Alexander. *Caldwell, 732 F. Supp. 2d 458* at 472.  As mentioned, Plaintiff alleges that Alexander was being treated by the medical Defendants and that these Defendants determined when Alexander should be placed in suicide watch.  Defendant Warden Asure did not provide medical care or treatment to Alexander.

Additionally, we find that Plaintiff has failed to state Eighth Amendment claims against Defendant Asure, a non-physician, since Alexander was allegedly given medical care by the medical Defendants and he received attention for his mental conditions by these Defendants. *Durmer v. O'Carroll*, 991 F.2d. 64, 69 (3d. Cir. 1993); *see also Thomas v. Zinkel,* 155 F. Supp. 2d 408, 413 (E.D. Pa. 2001)(Prison officials "who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor."(citing *Durmer*, 991 F. 2d at 69 n. 14)); *Newton v. Reitz*, 2009 WL 233911("non-physician Defendant cannot be held liable for being deliberately indifferent to an inmate's medical needs where, as here, the inmate is receiving treatment from the institution's health care staff.")(citing *Durmer*, 991 F. 2d at 69); *Meekins v. Law*, 2007 WL 2318118, * 3 (M.D. Pa. 8-8-07); *Ponzini v. Monroe County*, 897 F.Supp.2d 282, 293 (M.D. Pa. 2012).

As Defendants correctly state, "Plaintiff concedes in her [Second] Amended Complaint] that [Alexander] received regular medical care from Prime Care physicians and nurses, including from Nurse [Johnson], an LPN, and from Doctors Thomas, Wilson, and Dedania ... ."  (Doc. 39, pp. 18-19).  In fact, as Defendants indicate, Plaintiff admits that just 16 days before Alexander hung himself, he was referred to the prison psychiatrist, and it was reported that Alexander was very

upset. Further, as stated, Plaintiff alleges that Defendant Nurse Johnson removed Alexander from suicide watch on May 18, 2011, and not Warden Asure. (*Id*.). Indeed, as Defendants indicate, "[i]t would have inappropriate, and unethical, for Monroe County officials and Warden Asure, as laypersons, to interfere with the medical decisions and prescribed treatment offered by the Prime Care medical staff." (*Id*.).

In a prison suicide case, the Third Circuit Court has held that a Plaintiff "must establish three elements: (1) the detainee had a particular vulnerability to suicide, (2) the custodial officers [knew of and disregarded that vulnerability], and (3) those officers acted with reckless indifference to the detainee's particular vulnerability." *Kelley v. Bradford County*, 2010 WL 1136313, *4 (M.D. Pa. March 23, 2010)(citations omitted). Thus, "a party seeking relief in a jail suicide case must present evidence that is sufficient 'to overcome the 'high hurdle' set by the deliberate indifference standard for liability under §1983.'" *Id.*(citation omitted).[5]

Plaintiff states that Alexander was placed on suicide watch by prison officials after he was confined in MCCF in April 2011 until May 18, 2011. Plaintiff states that on May 18, 2011, Defendant Nurse Johnson removed Alexander from suicide watch despite the fact that Alexander had a known history of mental health problems and suicidal thoughts. Plaintiff further avers that on May 26, 2011, Alexander complained to medical staff at MCCF that he was paranoid. We find that Plaintiff has sufficiently averred that Alexander had a particular vulnerability to suicide.

---

[5]We note that Defendants also cite to the *Kelley v. Bradford County* case and we agree with Defendants that Kelley is directly on point with our case regarding the applicable law in an inmate suicide civil rights action despite the fact that the *Kelley* Court ruled on a summary judgment motion.

To meet the second element, Plaintiff must show that Defendant Warden Asure had "a *subjective* awareness of a substantial risk of serious harm. Thus, a Plaintiff must show actual awareness of the risk, not just that the risk would have been perceived by an objective, reasonable person." *Id.* (citation omitted)(emphasis in original). As such, our Plaintiff must show that Defendant Warden Asure subjectively knew Alexander was at substantial risk of committing suicide and that Asure intentionally disregarded the risk.

Under the Eighth Amendment, prison officials have a duty to protect the safety and well being of inmates. In *Glazewski v. Corzine*, 385 F. App'x 83, 88 (3d Cir. 2010), the Court stated:

> To establish a failure to protect claim, an inmate must demonstrate that: (1) he is "incarcerated under conditions posing a substantial risk of serious harm;" and (2) the prison official acted with "deliberate indifference" to his health and safety. *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970. "[T]he official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v. Whetzel,* 256 F.3d 120, 133 (3d Cir. 2001).

In *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001), the Third Circuit stated that:

> a defendant can rebut a prima facie demonstration of deliberate indifference either by establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring. *See id.* at 844, 114 S.Ct. 1970.

We find that Plaintiff 's Second Amended Complaint indicates that the medical Defendants, not the County Defendants, decided when to place Alexander on suicide watch and when to remove him from it, and it alleges that the medical Defendants were providing Alexander with psychiatric care during the relevant times of this case. It was also the medical Defendants who decided how and when to treat Alexander for his mental health conditions, including prescribed medications and counseling as well as the extent Alexander needed to be watched. We find that

Plaintiff has not alleged that Defendant Asure was actually aware of the existence of an excessive risk of self-harm to Alexander, rather, her allegations only indicate that Asure should have been aware of Alexander's condition. "[I]t is immaterial what [Defendant Asure] 'should have known'" since this is not the standard for Plaintiff's Eighth Amendment claims. *Kelley v. Bradford County*, 2010 WL 1136313, *5(citation omitted). Further, we find that the County Defendants took reasonable steps to prevent any harm from occurring to Alexander by contacting with Prime Care to have its medical staff care for inmates in MCCF, and by having the medical Defendants treat and care for Alexander during his 2011 confinement in the prison. Further, we concur with County Defendants that it would have been totally inappropriate for Defendant Warden Asure to second guess the treatment and care that medical Defendants were providing to Alexander.

As in the *Kelley* case, we find that Plaintiff's allegations, at best, against Defendant Warden Asure amount negligence, in not having Alexander more thoroughly check on by prison staff. "Negligence, however, does not give rise to an Eighth Amendment violation." *Kelley v. Bradford County*, 2010 WL 1136313, *6(citation omitted).

Therefore, since we find that Plaintiff has not sufficiently alleged that Defendant Warden Asure had "a subjective awareness of a risk of substantial harm" to Alexander, that Asure had knowledge of Alexander's state of mind, and that Asure consciously disregarded Alexander's particular vulnerability to suicide, we will recommend that County Defendants' Motion to Dismiss be granted as to Warden Asure in her individual capacity. Thus, we will recommend that Plaintiff's Eighth Amendment claim in Count I of her Second Amended Complaint be dismissed with prejudice as against Defendant Warden Asure in her individual capacity. Based on the above, we

find futility and undue prejudice to Defendant Asure to allow Plaintiff to file a third amended complaint with respect to her Eighth Amendment claim against Asure in her individual capacity. *See Kelley, supra*.

As stated above, Plaintiff also raises due process claims against County Defendants under the Fifth and Fourteenth Amendments. We have found that Plaintiff 's allegations as against Defendants Landon and Asure, at most, amount to negligence claims and not Eighth Amendment claims.

The Court in *Kelley v. Bradford County*, 2010 WL 1136313, *6, stated:

> Plaintiff also alleges that the failure of [prison official] Defendants [ ] to act [to prevent inmate's suicide] makes them liable under § 1983 pursuant to the Due Process clause of the Fifth and Fourteenth Amendments to the United States Constitution. "[T]he Due Process Clause is simply not implicated by a *negligent* act of an official." *Daniels v. Williams,* 474 U.S. 327, 328 (1986) (emphasis in original). Rather, liability requires "more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). The Third Circuit has noted that "the standard of culpability for substantive due process purposes must exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.' " *Miller v. City of Philadelphia,* 174 F.3d 368, 375-76 (3d Cir.1999).

The *Kelley* Court then stated that the inaction of the Defendant prison staff and failure to check on the inmate (who committed suicide) was, at most negligence. The *Kelley* Court concluded that "[a]t best, [Defendant prison staff were] negligent, and negligence is not enough to give rise to a violation of [inmate] Kelley's substantive due process rights. Accordingly, Plaintiff's Fifth and Fourteenth Amendment claims fail against the individual Defendants."

Thus, as in *Kelley*, we find that Plaintiff's Fifth and Fourteenth Amendment due process

claims fail against Defendants Landon and Asure.    *See Kelley, supra*.

County Defendants also argue that Plaintiff has failed to state an Eighth Amendment claim against Monroe County and against Warden Asure in her official capacity due to custom, policies and practices of the County. In Count I, Plaintiff brings §1983 claims against Monroe County and Warden Asure in her official capacity.   "A municipality and its officials acting in their official capacities can be sued directly under §1983 only if an action pursuant to a municipal policy, practice or custom directly causes a constitutional tort."   *Kelley v. Bradford County*, 2010 WL 1136313, *6(citing   *Monell v. N.Y. City Dep't of Soc. Svcs.*, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978)).   "A municipality or supervisor, however, cannot be held liable solely because it employs a tortfeasor; there is no *respondeat superior* liability under §1983."   *Id*.(citing   *Monell, supra)*.

We agree with County Defendants and find that Plaintiff  has not stated a proper constitutional claim against Defendants Monroe County and against Warden Asure in her official capacity, during the time Alexander  was confined at MCCF, under *Monell v. Department of Social Servs.*, *supra*.   The standards annunciated in *Monell* apply to  Monroe County and Warden Asure in her official capacity.  *See Kelley, supra; Malles v. Lehigh County*, 639 F.Supp.2d 566 (E.D. Pa. 2009). County Defendants allegedly contracted with Prime Care to provide medical care, including mental health care,  to inmates at MCCF during the relevant times of this case. Also, medical Defendants allegedly treated and evaluated Alexander and determined what care he needed and when he needed to be on suicide watch.   County Defendants cannot be held liable for the conduct of persons it supervises pursuant to *respondeat superior*.  *Meyers v. Schuylkill Co. Prison*, 2006 WL

559467, *9 (M.D. Pa.).[6]  Rather, County Defendants  "[are] subject to liability [in a §1983 action] to the extent [they] maintain[ed] an unconstitutional custom or policy that caused the alleged constitutional violation."  *Id.* (citation omitted).

In *Mangus*, the Court stated:

> With respect to such institutional defendants it is clear that a County cannot cannot be held liable for the unconstitutional acts of its employees on the theory of respondeat superior.  *See Monnell v. Department of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, [a plaintiff] must demonstrate that the violation of his rights was caused by either a policy or a custom of the [county]. *See Beck v. City of Pittsburgh,* 89 F.3d 966, 971 (3d Cir.1996).  *Berg v. County of Allegheny,* 219 F.3d 261, 275 (3d Cir.2000).

2010 WL 521114, *3.

Thus, County Defendants ( Monroe County and Warden Asure in her official capacity) cannot be held liable, either for their  conduct or for the conduct of Prime Care employees, such as the medical Defendants,  pursuant to *respondeat superior.  Brickell v. Clinton County Prison Bd.*, 658 F.Supp. 2d 621, 626-27 (M.D. Pa. 2009).   In order for Plaintiff to successfully allege a constitutional claim under §1983 against County Defendants, she must raise a *Monell* claim alleging that Monroe County is a governmental entity and thus a "person" under §1983 and, alleging that either a policy or lack of policy of the County led to the violation of Alexander's constitutional rights.  *See Monell v. New York Dept. of Social Servs.*, *supra*; *see also Kokinda v. Breiner*, 557 F. Supp. 2d 581, 587 (M.D. Pa. 2008).

---

[6]*See also Mangus v. DCP*, 2010 WL 521114, *8-*6 ( M.D. Pa. 2010).

In *Kokinda,* 557 F. Supp. 2d at 590-91, the Court stated:

Under *Monell*, "municipalities and other local government units are among those "persons" to whom Section 1983 applies." *Malles v. Lehigh County*, 639 F. Supp. 2d 566, 576 (E.D. Pa. 2009). As the Court in *Malles v. Lehigh County*, 639 F. Supp. 2d at 576, stated:

> According to the teaching of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L. Ed. 2d 611 (1978), Lehigh County "can be sued directly under §1983 ... [when] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by [Lehigh County's] officers" or where the constitutional deprivations occurred pursuant to governmental custom. *Monell*, 436 U.S. at 690.

> To survive a motion to dismiss, the plaintiff must "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." *Grayson v. May view State Hosp.*, 293 F.3d 103, 107 (3d Cir. 2002)(citing *Bd. of County Comm'rs of Bryan County v.Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

> But, despite Defendants' arguments that Plaintiff has failed to allege any specific policies that authorized the actions officers Brenner and Ohl allegedly took, (Doc. 9, at 10; Doc. 11, at 6-8), there is no requirement at the pleading stage for Plaintiff to identify a specific policy to survive a motion to dismiss. *Carter v. City of Philadelphia*, 181 F.3d 339, 358 (3d Cir. 1999). This would be "unduly harsh" at this early juncture. *Id.*

Therefore, in order to properly state a §1983 claim against County Defendants, Plaintiff must not only allege that the County qualifies as a governmental entity and thus is a person under §1983 standards, but Plaintiff must also must allege that County Defendants unconstitutionally implemented or executed a policy statement, ordinance, regulation, decision or custom leading to the stated violations of his constitutional rights. We find that Plaintiff has failed to allege that

County Defendants, through its policies and customs, failed to train Prime Care's medical personnel correctly, and failed to ensure that the medical personnel properly provided MCCF inmates with mental health care. As stated, Plaintiff alleges that County Defendants contracted with Prime Care to provide medical care and treatment to inamtes confined in MCCF, and Plaintiff alleges that these medical Defendants did in fact provide care to Alexander during the relevant times of this case.

Additionally, if the policy at issue relates to a failure to train or supervise municipal employees, such as in the instant case, "liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)(citation omitted); *Spiess v. Pocono Mountain Regional Police Department*, 2010 WL 2985959, *8. Further, Plaintiff "must show causation." *Spiess v. Pocono Mountain Regional Police Department*, 2010 WL 2985959, *8. "Liability exists only when 'there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Id.*(citations omitted).

We find that Plaintiff has not properly stated a claim against County Defendants in Count I of her Second Amended Complaint, since the alleged unconstitutional conduct by County Defendants cannot be said to have proximately cause Alexander to commit suicide where the medical Defendants employed by Prime Care were in charge of treating Alexander. "Moreover, to establish the liability of a municipal Defendant, such as [Monroe] County, Plaintiff must show that a responsible policymaker was aware of a substantial risk of inmate suicide and of alternative[s] to prevent them, but deliberately chose not to peruse such alternatives or acquiesced in a longstanding policy or custom of inaction." *Kelley v. Bradford County*, 2010 WL 1136313, *8(citation omitted).

Based on *Kelley, Kokinda* and *Malles*, we find Plaintiff's allegations do not sufficiently state that County Defendants caused the alleged violations of Alexander's constitutional rights by having customs, policies, practices and procedures, and that Plaintiff did not state how these policies gave rise to the violations of Alexander's constitutional rights. Thus, we will recommend that County Defendants' Motion to Dismiss Count I of Plaintiff's Second Amended Complaint be granted, and that Count I be dismissed with prejudice as against Monroe County and Warden Asure in her official capacity. In light of the foregoing, we find futility and undue prejudice to County Defendants in allowing Plaintiff to file a third amended Complaint as against these Defendants. Since there are no other claims against Defendant Warden Asure, we will recommend that this Defendant be dismissed from this case entirely.

Finally, in Count III, Plaintiff asserts an Eighth Amendment claim against Defendant Monroe County under §1983 alleging that the County had a custom and policy of failing to provide adequate funding to the County's Public Defender's Office so that it could properly represent indigent criminal Defendants, especially those with mental health conditions which required psychiatric evaluations. In Count III of her Second Amended Complaint, Plaintiff raises a §1983 claim against Defendant Monroe County under *Monell* for failure to properly fund the County Public Defender's Office and failed to properly train its public defenders to evaluate the mental health of their clients which allegedly lead to Alexander's defense counsel's failure to seek timely approval from the County Court in Alexander's criminal case to have Alexander undergo a psychiatric evaluation. Plaintiff also avers that if Alexander's defense counsel had such earlier approval from the County Court to have Alexander undergo a psychiatric evaluation, Alexander

would have received a sooner evaluation which would have revealed that Alexander was suicidal. Plaintiff then speculates that the more timely evaluation would have been sent to MCCF, despite the fact that it was requested in Alexander's criminal court case, and that MCCF and/or medical Defendants would have then placed Alexander on suicide watch which would have prevented his suicide.

We agree completely with County Defendants that "the causative link between the County's [Public Defender] funding and [Alexander's] suicide is so tenuous as to preclude liability as a matter of law." (Doc. 39, p. 27).

In *Kelley,* the Court considered whether Bradford County Correctional Facility's ("BCCF") policy of permitting inmates to sleep on the floor would have allowed prison staff to have discovered the inmate trying to commit suicide sooner than they did and thus, staff may have been able to prevent the inmate's suicide. The *Kelley* Court stated that Plaintiff's contention "proves specious because it relies on a relaxed standard of causation that is appropriate in negligence actions, but not civil rights actions based upon alleged deliberate indifference of a state actor to a substantial risk of harm to Plaintiff." 2010 WL 1136313,*8.

The *Kelley* Court then stated:

> "To prevail and recover damages on [a] section 1983 claim under ... a deliberate indifference ... theory [the plaintiff] must prove that [defendants'] actions were both the actual and the proximate cause of [the plaintiff's] injuries." *White v. Roper,* 901 F.2d 1501, 1505 (9th Cir.1990). That is, a § 1983 plaintiff may only recover damages for injuries that would not have occurred "but for" the alleged wrongful conduct. *Id.* Thus, where, as here, "the deliberate indifference takes the form of an omission-a failure to act-the proximate cause inquiry requires at a minimum that the plaintiff's injury

would not have occurred but for the defendant's failure to take the curative action." *Hvorcik v. Sheahan,* 847 F.Supp. 1414, 1425 n. 28 (N.D.Ill.1994). Absent competent proof that the alleged violation of a constitutional right proximately caused the injury for which damages are claimed, no recovery is possible. *See Horn by Parks v. Madison County Fiscal Court,* 22 F.3d 653, 659 (6th Cir.1994).

*Id.*

We agree entirely with County Defendants that Plaintiff 's allegations in Count III fail to state cognizable constitutional claims since the failure to adequately fund the County Public Defender's Office and the failure to train its attorneys as to clients with mental health conditions simply cannot be said to have proximately caused Alexander to commit suicide. As thoroughly discussed, Plaintiff concedes that Alexander was receiving care and treatment by the medical Defendants during the relevant times of his confinement in MCCF. In fact, the medical Defendants were evaluating Alexander and they were deciding when to put Alexander on suicide watch and when to take him off of it. Additionally, Monroe County contracted with Prime Care to provide medical care and mental health treatment for inmates confined at MCCF and, thus had a policy to ensure inmates with mental health conditions would be evaluated and treated regardless of whether the inmates received psychiatric evaluations in their underlying criminal cases. As such, the County can be said to have had a policy to prevent inmate suicides by hiring Prime Care to treat inmates with suicidal propensities. In short, we find Plaintiff fails to properly state that the funding of the County Public Defender's Office and the training of its attorneys caused Alexander to commit suicide.

Further, Monroe County cannot he held liable for failure to train its public defenders to evaluate the mental health of their clients since it had contracted with Prime Care to provide

medical staff to evaluate the mental conditions and care of inmates confined at MCCF. *See Kelley*, 2010 WL 1136313,*9(municipal liability of county cannot be premised "upon a bare assertion of a failure to train.")(citing Cruise v. Marino, 404 F.Supp.2d 656, 674 (M.D. Pa. 2005)). Monroe County simply cannot be said to have been deliberately indifferent to Alexander and to have proximately caused Alexander's suicide by not training its public defenders to evaluate the mental health of their clients. Nor does the timeliness of the psychiatric evaluation which the County Court eventually ordered in Alexander's criminal case have any relevancy with respect to a constitutional claim against the County and with respect to whether the inmate was on suicide watch since Alexander was already being evaluated and treated for his mental health conditions by the medical Defendants at MCCF and these Defendants determined if Alexander needed to be placed on suicide watch. As Defendants correctly point out, Plaintiff admits that Alexander was referred to the psychiatrist at MCCF on June 3, 2011 and he was already under the care of the MCCF medical personnel.

Additionally, as Defendants point out, it is well-settled that a criminal defense counsel in a criminal case, even if court appointed, is not a state actor for purposes of §1983. Thus, Alexander's criminal defense attorney is not considered a state actor. *See Polk v. County of Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445 (1981)(a private attorney, even if appointed and paid for by the state, is not acting under color of state law when performing his function as counsel); *Stankowski v. Farley*, 487 F.Supp. 2d 543 (M.D. Pa. 2007).

Further, as County Defendants correctly explain, the Monroe County Court Criminal Docket in Alexander's case, of which we take judicial notice, shows that Alexander's criminal defense

attorney did file two motions for psychiatric evaluation of Alexander with respect to Alexander's criminal case. County Defendants state that the County Court ordered the evaluation on July 11, 2011. County Defendants also state that it was entirely up to the County Court whether to order such an evaluation and when to order it, and how much money the Court would authorize for the evaluation. As such, County Defendants are entirely correct that Monroe County cannot be held labile under §1983 with respect to Plaintiff's claims in Count III. Thus, we will recommend that County Defendants' Motion to Dismiss Count III of Plaintiff 's Second Amended Complaint be granted, and that Count III be dismissed with prejudice as against Monroe County. Based on the foregoing, we find futility and undue prejudice to County Defendants in allowing Plaintiff to file a third amended Complaint as against Monroe County. Since there are no other claims against Defendant Monroe County, we will recommend that this Defendant be dismissed from this case entirely.

## V.  RECOMMENDATION.

Based on the foregoing, it is respectfully recommended as follows:

1.  Plaintiff's requests for monetary damages, both compensatory and punitive damages, against Defendants Asure and Landon in their official capacities, should be dismissed with prejudice.

2.  Plaintiff's request for punitive damages, insofar as it is against Defendant Monroe County, should be dismissed with prejudice.

3.  All of Plaintiff's claims under the Fourteenth Amendment in Counts I, II, III and IV of her

Second Amended Complaint should be dismissed with prejudice as against all Defendants.

4. County Defendants' Motion to Dismiss (Doc. 38) Plaintiff 's claim against Defendant CO Landon should be granted. Plaintiff's Eighth Amendment claim against Defendant CO Landon in Count II of her Second Amended Complaint should be dismissed with prejudice, and Defendant Landon should be dismissed entirely from this case.

5. County Defendants' Motion to Dismiss (Doc. 38) Plaintiff 's claim against Defendant Warden Asure should be granted. Plaintiff's Eighth Amendment claims against Defendant Warden Asure in Count I of her Second Amended Complaint should be dismissed with prejudice, and Defendant Asure should be dismissed entirely from this case.

6. County Defendants' Motion to Dismiss (Doc. 38) all of Plaintiff 's claim against Defendant Monroe County should be granted. All of Plaintiff's claims against Defendant Monroe County in Counts I and III of her Second Amended Complaint should be dismissed with prejudice, and Defendant Monroe County should be dismissed entirely from this case.

7. Remand this case to the undersigned for further proceedings with respect to the remaining Defendants, including scheduling a Joint Case Management Conference after Defendants Dr. Thomas and Dr. Dedania respond to Plaintiff's Second Amended Complaint.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: December 18, 2013**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBRA L. ALEXANDER, adoptive | : | CIVIL ACTION NO. **3:CV-13-1758** |
| parent and Administratrix of the Estate | : | |
| of SCOTT ALONZO ALEXANDER, | : | (Judge Kosik) |
| | : | |
| Plaintiff | : | (Magistrate Judge Blewitt) |
| | : | |
| v. | : | |
| | : | |
| MONROE COUNTY, *et al.*, | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

Report and Recommendation dated **December 18, 2013.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the
> magistrate judge, making his or her own determination on the basis
> of that record.  The judge may also receive further evidence, recall

witnesses or recommit the matter to the magistrate judge with
instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may

constitute a waiver of any appellate rights.




**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**


**Dated: December 18, 2013**